IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS

| FANNIE MAE THARPE, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14 C 5641 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | Magistrate Judge Susan E. Cox |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Fannie Mae Tharpe ("Plaintiff") appeals the Commissioner of Social Security's ("Commissioner") decision to deny her Social Security disability benefits under Title II of the Social Security Act. We hereby construe Plaintiff's "brief in support of her motion to reverse the decision of the commissioner of social security" as a motion for summary judgment, and grant Plaintiff's motion [dkt. 13] and deny the Commissioner's motion for summary judgment [dkt. 17]. The Administrative Law Judge's decision is remanded for further proceedings consistent with this opinion.

## STATEMENT

Plaintiff appeals the Commissioner of Social Security's decision to deny her Social Security disability benefits under Title II of the Social Security Act ("SSA"). Plaintiff filed a motion for summary judgment seeking to reverse the decision of the Administrative Law Judge ("ALJ"). A motion for summary judgment has been filed on behalf of the defendant, Carolyn W. Colvin, Acting Commissioner of Social Security. For the reasons outlined below, we grant Plaintiff's motion [dkt. 13] and deny the Commissioner's motion [dkt. 17]. The ALJ's decision is remanded for further proceedings consistent with this opinion.

Plaintiff applied for social security disability insurance benefits on May 4, 2012.[1] Plaintiff alleged that she had the following disabling limitations: post-traumatic stress disorder

---

[1] R. at 18.

("PTSD"), depression, anxiety, hypertension, knee problems, and obesity.[2] The only severe impairments found by the ALJ, and disputed by the Plaintiff, were her PTSD, depression not otherwise specified ("NOS"), and an adjustment disorder.[3] Plaintiff's claim was initially denied, and denied again upon reconsideration on January 31, 2013.[4] Plaintiff filed a written request for an oral hearing and that hearing took place in front of Administrative Law Judge Victoria A. Ferrer on November 1, 2013.[5]

Plaintiff's PTSD stems from an incident in February 2011 where Plaintiff, who worked as a nurse at Mount Sinai Hospital Medical Center, got in an argument with one of her subordinates.[6] When Plaintiff instructed a Certified Nursing Assistant ("CNA") to complete duties assigned to her, the CNA refused and yelled at Plaintiff, "[y]ou don't tell me what to do! I'm in the union!"[7] The CNA also made a gun gesture with her hand, pointed it at Plaintiff, and threatened her.[8] In the days following the incident, Plaintiff tried to address the issue with her supervisors, but she "received little support or acknowledgement."[9] Department of Disability Services ("DDS") Physician, Larry Kravitz, Ph. D., testified at Plaintiff's hearing that this incident "wasn't just a one shot deal, this was an incident that happened which then was discussed with supervisors and other people, and she repeatedly thought she wasn't getting satisfaction. So it tended to really fester to the point that I think it became a very big problem."[10]

After the incident, Plaintiff began meeting with a social worker, Julie Franklin, weekly in

---

[2] R. at 102.
[3] R. at 20.
[4] R. at 18.
[5] *Id*.
[6] R. at 378.
[7] R. at 379.
[8] Id.
[9] *Id.*
[10] R. at 78

March 2011.[11] It was at this time that Ms. Franklin diagnosed Plaintiff with PTSD.[12] Plaintiff began missing work because of this incident, for therapy, and for unrelated illnesses, and eventually used up all of her sick days and paid time off.[13] Almost a year after the incident, in February 2012, Plaintiff was terminated for insubordination after she would not "turn to face [her supervisor] when [she] was speaking with her."[14]

In April 2011, after the incident and before her termination, Plaintiff began regularly reporting to Hinsdale Family Medicine Center.[15] There, Nicole Moses, M.D., prescribed Plaintiff medication to help deal with anxiety Plaintiff had when she "[thought] about returning to work."[16] In June 2011, Plaintiff was prescribed Klonpin to help deal with her anxiety related to the incident with her co-worker.[17] In August 2011, Angeline Vanessa Galiano, M.D., a physician at Hinsdale, confirmed a diagnosis of PTSD.[18] Plaintiff reported to Dr. Galiano that she was getting anxious at work and was unable to use the keyboard because her hands shook too much.[19] Plaintiff also reported to Dr. Galiano that she was missing days of work because she was not getting enough sleep at night.[20] Dr. Galiano recommended that Plaintiff see a psychiatrist at Linden Oaks Medical Center.[21] At a follow up appointment, another physician at Hinsdale diagnosed Plaintiff with depression NOS.[22]

In September 2011, Plaintiff began seeing her treating physician, Kelli Keller, M.D., once

---

[11] R. at 378.
[12] Id.
[13] R. at 407.
[14] R. at 379.
[15] R. at 386.
[16] R. at 386-88.
[17] R. at 394.
[18] R. at 408.
[19] R. at 404.
[20] Id.
[21] R. at 408.
[22] R. at 409.

or twice per month.[23] Dr. Keller confirmed diagnoses of PTSD and depression NOS, and prescribed additional medications to manage Plaintiff's depression.[24] In February 2012, Dr. Keller prescribed Plaintiff Ativan to take when she was having an anxiety attack.[25]

Plaintiff reported to Dr. Keller that she experiences two anxiety attacks per week.[26] Plaintiff's anxiety attacks last for 15-30 minutes, and she stated that, during the attacks, it "feel[s] like things [are] closing in."[27] Plaintiff's anxiety attacks are also accompanied by shortness of breath and chest pains, and are brought on by stress related to financial debts, foreclosure of her homes, and court appearances related to the incident with the CNA.[28] At one point, Plaintiff reported to Dr. Keller that her financial stress was so great that she had to go a month without refilling her Ativan prescription because she could not afford it.[29] Plaintiff testified that she had an anxiety attack on her way to her hearing before the ALJ.[30]

In February 2013, Dr. Keller reported that Plaintiff's PTSD symptoms had increased.[31] The following month, Dr. Keller filled out a mental status exam and reported that Plaintiff had mild to moderate limitations in activities of daily living, moderate to marked limitations in maintaining social functioning, deficiencies in maintaining concentration, persistence or pace, and repeated episodes of decompensation.[32] In August 2013, Plaintiff's new therapist, Jill Baures, reported limitations ranging from moderate to marked in most categories, with extreme impairments in Plaintiff's ability to perform activities within a schedule, maintain regular

---

[23] R. at 437; R. at 50.
[24] R. at 429-37.
[25] R. at 434.
[26] R. at 455; R. at 501.
[27] R. at 59-60.
[28] R. at 58.
[29] R. at 454.
[30] R. at 58.
[31] R. at 501.
[32] R .at 479-81.

attendance and be punctual, and set realistic goals or make plans independently of others.[33] Both Ms. Baures and Dr. Keller reported that Plaintiff's limitations would cause her to be unreliable.[34]

Following Plaintiff's hearing, the ALJ determined, *inter alia*, that: (1) Plaintiff had not engaged in substantial gainful activity since February 3, 2012; (2) Plaintiff suffered from severe impairments in the form of PTSD, depressive disorder NOS, and an adjustment disorder; (3) Plaintiff's impairments did not meet the severity of "the listings" in 20 CFR Part 404, Subpart P, Appendix 1; (4) Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations: Plaintiff can perform simple, routine and repetitive tasks; can understand, remember and carry out detailed instructions; is able to concentrate and persist for 1-hour segments, then would be off-tasks for 5 minutes, then go back on task; can frequently interact with coworkers and supervisors, but only for task related duties; can occasionally be supervised; and should not work in tandem with others; and (5) there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, given her age, education, work experience, and residual functional capacity.[35]

## I. STANDARD OF REVIEW

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether the plaintiff is disabled as set forth in the Act,[36] if it is supported by substantial evidence, and if it is free of legal error.[37] Substantial evidence is such "relevant

---

[33] R. at 528-529.
[34] R. at 529, 534.
[35] R. at 15.
[36] 20 C.F.R. §§ 404.1520(a) and 416.920(a).
[37] 42 U.S.C. § 405(g).

evidence as a reasonable mind might accept as adequate to support a conclusion."[38] This Court must reverse if there is an error of law, even if the evidence adequately supports the conclusion.[39] Although we review the ALJ's decision deferentially, she must nevertheless build a "logical bridge" between the evidence and her conclusion.[40] A "minimal[] articulat[ion] of her justification" is enough.[41]

## II. DISCUSSION

Plaintiff raises many arguments in her brief, but this Court only reaches the argument regarding the ALJ's error in analyzing Plaintiff's treating physician, as this error is enough to necessitate remand.[42] The ALJ afforded no weight to Plaintiff's treating physician's medical opinion.[43] In justifying her decision, the ALJ cited three factors: 1) internal inconsistencies in Dr. Keller's treatment notes and mental status exams;[44] 2) her determination that "Ms. Keller is not an acceptable medical source under the regulations";[45] and 3) her statement that she "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527."[46]

---

[38] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).
[39] *Schmoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).
[40] *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).
[41] *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).
[42] Upon remand, the ALJ should: 1) perform a closer examination of the record to determine what, if any, weight to assign to Dr. Keller's opinion; 2) explain why Dr. Keller's mental status exams discredit her medical opinion, and look at Plaintiff's medical history as a whole instead of cherry-picking mental status exams that favor a finding of no disability; 3) treat Jill Bauers, Plaintiff's therapist, as an "other source," as mandated by SSR 06-03p, and determine what weight her opinion deserves with the help of the 20 CFR § 404.1527(c) factors, instead of discarding it by stating, "Mr. Braves is not an acceptable medical source under the regulations, and as such no weight is to be given to his opinion"; 3) inquire into the Plaintiff's reasoning for her non-compliance with her prescribed medication; and 4) provide further explanation as to why Plaintiff's ability to complete activities of daily living discredits her allegations of disabling limitations.
[43] R. at 25.
[44] *Id*.
[45] Id.
[46] R. at 22.

## A. The ALJ Erred in Discrediting Dr. Keller's Medical Opinion Because of Internal Inconsistencies.

The ALJ's decision to afford no weight to Dr. Keller's opinion because of internal inconsistencies was in itself inconsistent. As Plaintiff noted in her brief, "an administrative agency's decision cannot be upheld when the reasoning process employed by the decision maker exhibits deep logical flaws."[47] Furthermore, while "[i]nternal inconsistencies may provide good cause to deny controlling weight to a treating physician's opinion, . . . the reasoning for the denial must be adequately articulated."[48]

When referring to Dr. Kravitz, the DDS physician called to testify at Plaintiff's hearing, the ALJ stated that she afforded great weight to his opinion that Plaintiff could "understand, remember and carry out simple and detailed instructions . . . [with limitation] to simple, repetitive tasks."[49] The ALJ supported this decision by qualifying Dr. Kravitz as a "seasoned medical expert," and stated that his opinion was "supported by the medical file, which shows improvement after [Plaintiff's] initial trauma."[50] However, the ALJ goes on to grant only some weight to Dr. Kravitz's opinion on the severity of Plaintiff's condition.[51] Specifically, the ALJ took issue with Dr. Kravitz's reliance on Exhibit 2F, a letter written by Plaintiff's original therapist, Julie Franklin.[52] Ms. Franklin's letter describes the incident at work that led to Plaintiff's symptoms, and briefly discusses some observations of Plaintiff's symptoms.[53] How the ALJ could afford great weight to Dr. Kravitz's opinion where it supported the idea that Plaintiff might be able to work with limitations, while affording only some weight to his opinion

---

[47] Pl.'s Mot. at 8; *Carradine v. Barnhart*, 360 F.3d 751, 756 (7th Cir. 2004).
[48] *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015).
[49] R. at 25.
[50] *Id.*
[51] *Id.*
[52] *Id.*
[53] R. at 378-380.

on the "severity of [Plaintiff's] condition" is unclear. This contradiction becomes even more difficult to understand when the ALJ discusses her treatment of Dr. Keller's opinion.

The ALJ "afford[ed] greater weight to Ms. Keller's mental status exams," than she did to Dr. Kravitz's opinion on the severity of Plaintiff's condition.[54] A few paragraphs later, the ALJ grants Dr. Keller's opinion regarding Plaintiff's limitations no weight.[55] While an "ALJ may still look to a treating physician's opinion after opting to afford it less evidentiary weight,"[56] she may not pick out and give weight to portions of an opinion that support the denial of benefits, while simultaneously discrediting portions of that same opinion because it supports a finding of disability.[57] In *Scott v. Astrue,* the Seventh Circuit held that the ALJ erred by cherry picking from treatment notes evidence that a claimant's symptoms had improved, while ignoring other evidence that supported a finding of disability.[58] Here, the ALJ gave greater than "some weight" to Dr. Keller's opinion where a few mental status exams supported less severe limitations than those suggested by Dr. Kravitz. Then, the ALJ went on to afford no weight to Dr. Keller's opinion where it supported the conclusion that Plaintiff's limitations were disabling. This convenient selection of evidence is inconsistent with the ALJ's own determinations and requires remand.

Logical flaws aside, the ALJ did not explain in enough detail the inconsistencies upon which she relied. The ALJ in this case simply reasoned that the "extreme limitations" reported

---

[54] *Id.*
[55] *Id.*
[56] *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).
[57] *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (holding "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."); *see also Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).
[58] 647 F.3d 734, 740 (7th Cir. 2011).

by Dr. Keller are not supported by her treatment notes and mental status exams.[59] When referring to these extreme limitations, the ALJ cited Exhibit 13F;[60] however, the ALJ failed to recognize that Exhibit 13F was prepared by Jill Baures, Plaintiff's therapist, not Dr. Keller.[61] Dr. Keller did prepare Exhibit 11F, the other exhibit cited by the ALJ, but she did not assess any extreme impairments and instead limited her assessment to mild, moderate, and marked impairments.[62]

Additionally, the ALJ found Dr. Keller's opinion inconsistent based on the fact that "Ms. Keller stated in her treatment notes . . . that the claimant should start with part-time-work."[63] The mere fact that Dr. Keller felt that Plaintiff, if working at all, should start with part-time work, does not present such an obvious internal inconsistency to warrant the lack of explanation that it received. While the ALJ may minimally articulate her justifications,[64] this cursory treatment does not build the logical bridge required for this Court to follow her reasoning.

### B. The ALJ Erred in Finding that Dr. Keller is not an Acceptable Medical Source

The ALJ's justification that Dr. Keller is not an acceptable medical source is incorrect. The ALJ discredited Dr. Keller's medical opinion after she determined that "Ms. Keller is not an acceptable medical source under the regulations."[65] Both 20 C.F.R. § 416.913 and Social Security Ruling 06-3p include licensed physicians, medical or osteopathic doctors, as one category of acceptable medical sources.[66]

---

[59] R. at 25.
[60] Id.
[61] R. at 529.
[62] R. at 479-81.
[63] R. at 25.
[64] *Berger*, 516 F.3d 539 at 545.
[65] R. at 25.
[66] 20 C.F.R. § 416.913; Social Security Ruling, SSR 06-03p; Titles II and XVI: Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims;

Dr. Keller attended medical school, graduated, and now works as a licensed physician; any conclusion to the contrary is a clear error. The ALJ referred to Dr. Keller as "Ms. Keller" on six occasions, despite the fact that "MD" always follows Dr. Keller's signature on documents contained in the record.[67] Dr. Keller is a licensed physician, and there is simply no support for the ALJ's conclusion that Dr. Keller is not an acceptable medical source under the regulations.

### C. The ALJ Erred in Explaining Why She Gave No Weight to Dr. Keller's Medical Opinion.

Finally, the ALJ erred by not properly assessing how much weight to give Dr. Keller's opinion after she decided not to give it controlling weight. "A treating physician's opinion is entitled to 'controlling weight' if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.'"[68] The Seventh Circuit has held time and again that, when rejecting a treating physician's opinion, an ALJ is "required to provide a sound explanation for [her] decision to reject it."[69] To help structure this explanation, 20 CFR § 404.1527(c) lays out a checklist of factors that ALJ's should consider in determining how much weight a medical opinion warrants.[70] The checklist of factors includes: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of the treatment relationship"; (3) "[s]upportability"; (4) consistency

---

Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, 71 FR 45593-03.
[67] See R. at 428, 458, 460, 492, 500.
[68] *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010).
[69] *Roddy v. Astrue*, 705 F.3d 631, 636-637 (7th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2); *Jelinek v. Astrue,* 662 F.3d 805, 811 (7th Cir. 2011); *Campbell v. Astrue,* 627 F.3d 299, 306 (7th Cir. 2010); *Schmidt v. Astrue,* 496 F.3d 833, 842 (7th Cir. 2007).
[70] *See Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *Larson,* 615 F.3d 744 at 751.

"with the record as a whole"; and (5) whether the treating physician was a specialist in the relevant area.[71]

In the beginning of the ALJ's decision, she mentioned that she "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527,"[72] but she failed to include specific treatment of any of those requirements in the remainder of her opinion. The ALJ did not touch on the fact that Dr. Keller had been treating Plaintiff regularly since September 2011.[73] The ALJ did not touch on the fact that Dr. Keller's diagnosis of chronic PTSD and depression NOS were consistent with the observations made by DDS physician, Dr. Kravitz,[74] and other physicians at Hinsdale Family Medicine Center.[75] Finally, the ALJ did not consider whether Dr. Keller was a specialist in the field of psychiatry.

The ALJ is not required to enumerate and discuss each and every one of these factors, but she is required to minimally articulate her reasons for rejecting Dr. Keller's medical opinion.[76] Furthermore, even though addressing all of these factors may have still led the ALJ to assign the same weight to Dr. Keller's medical opinion, her failure to articulate her reasoning, or explain her analysis of any of the factors from 20 CFR § 404.1527(c) in any more than in passing, necessitates remand.[77]

## CONCLUSION

For the foregoing reasons, we remand this matter for further proceedings consistent with this opinion. Plaintiff's motion for summary judgment [dkt. 13] is granted and the Commissioner's motion for summary judgment is hereby denied [dkt. 17].

---

[71] 20 C.F.R. § 404.1527(c)(2)-(5);
[72] R. at 22.
[73] R. at 50.
[74] R. at 71.
[75] R. at 404; R. at 437.
[76] *Berger*, 516 F.3d 539 at 545.
[77] See cases cited *supra* n. 62.

**ENTER:**

**DATED:** August 6, 2015

　　　　　　　　　　　　　　　　　　　　　　　　　　　　Susan E. Cox
　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge